UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **ABIGAIL MATUTE** | * | **CIVIL ACTION NO. 19-0124** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **WAL-MART STORES, INC., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 7] filed by plaintiff Abigail Matute. The motion is opposed. For reasons set forth below, it is recommended that the motion to remand be DENIED.

**Background**

Abigail Matute filed the instant suit on May 24, 2018, against Wal-Mart Stores, Inc. in the Fifth Judicial District Court for the Parish of Franklin, State of Louisiana. (Petition). Plaintiff seeks recovery for injuries to her knees, ankles, right hip, shoulder, and body that she sustained in the wake of a May 30, 2017, slip and fall accident while shopping at the Winnsboro, Wal-Mart store. *Id.*

On August 16, 2018, Matute perfected service on defendant, Wal-Mart Stores, Inc. (Notice of Removal). On September 28, 2018, Wal-Mart Stores, Inc. filed its answer to the suit, which Wal-Mart Louisiana, L.L.C., also joined in, on the basis that the latter entity was the actual owner and operator of the Winnsboro store where plaintiff sustained her injury. (Answer).

On February 1, 2019, Wal-Mart Stores, Inc. and Wal-Mart Louisiana, L.L.C.

(collectively, "Wal-Mart") removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). On February 19, 2019, plaintiff filed the instant motion to remand the case to state court because she contends that removal was untimely. 28 U.S.C. § 1447(c). Wal-Mart filed its opposition brief on March 12, 2019. [doc. # 9]. Plaintiff filed her reply on March 19, 2019. [doc. # 10]. Thus, the matter is ripe.

## Law and Analysis

A defendant may remove an action from state court to federal court, provided the action is one in which the federal court may exercise original jurisdiction. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441(a)). The removing defendant bears the burden of establishing federal subject matter jurisdiction and ensuring compliance with the procedural requirements of removal. *Id*. Because federal courts are courts of limited jurisdiction, a suit is presumed to lie outside this limited jurisdiction unless and until the party invoking federal jurisdiction establishes to the contrary. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted).

To determine whether jurisdiction is present, courts consider "the claims in the state court petition as they existed at the time of removal." *Manguno*, 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

## I. The Court Enjoys Subject Matter Jurisdiction

Wal-Mart invoked this court's subject matter jurisdiction, via diversity, which contemplates complete diversity of citizenship and an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a). Both requirements are satisfied here. First, the parties are

2

completely diverse: plaintiff is a Louisiana domiciliary and citizen; defendants ultimately are citizens of Arkansas and Delaware. (Notice of Removal, ¶¶ 4-5). Second, Wal-Mart has demonstrated by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal.

Pursuant to the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), the removal statute now specifies that

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks--
>
> \* \* \*
>
> **(ii)** a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded . . .

28 U.S.C. § 1446(c)(2)(A)(ii).

When, as permitted above, the amount in controversy is derived from the notice of removal, the removing defendant must demonstrate by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. 28 U.S.C. § 1446(c)(2)(B); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (removing party bears the burden of establishing federal jurisdiction).

"To satisfy the preponderance standard, the removing defendant may support federal jurisdiction either by establishing that it is 'facially apparent' that the claims probably exceed $75,000 or by establishing the facts in controversy in the removal petition or [summary judgment-type evidence] to show that the amount-in-controversy is met." *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 774 (5th Cir. 2003); *accord St. Paul Reinsurance Co. v. Greenberg*,

134 F.3d 1250, 1254 (5th Cir. 1998). Removal cannot be supported by conclusory allegations, however. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 n.7 (5th Cir. 1999) (citations omitted).

Wal-Mart alleged in its notice of removal that, on January 16, 2019, it received medical bills and records from plaintiff concerning her treatment costs incurred as a result of the subject accident, which showed accrued medical expenses of approximately $97,000. (Notice of Removal, ¶ 12).

In her motion to remand, plaintiff asserted that the referenced medical bills were for an unrelated medical issue that had nothing to do with the injuries from the fall. (M/Remand, Memo., pg. 1). In her reply brief, however, plaintiff explained that the medical records and bills that she produced in discovery included a cyst removal surgery that was not related to the fall. (Pl. Reply Brief, pg. 2) (citing Feb. 15, 2019, Matute Deposition, pgs. 19-20, Exh.).

In its opposition to remand, Wal-Mart submitted the affidavit of defense counsel's assistant, Ann Olsen, who averred that plaintiff had medical charges totaling $97,113.52 for bills from medical providers that she listed in her responses to Interrogatory Nos. 2 and 3. (Affidavit of Ann Olsen; Def. Opp. Brief, Exh. B).[1] The charges included, *inter alia*, $48,347 from the Colvin Clinic/Winnsboro Medical Clinic, $3,944.02 from the Riverland Medical Center, $4,188.50 at University Health in Shreveport, $14,652 at University Health at Conway, and

---

[1] Interrogatory No. 2 asked plaintiff to itemize all medical and hospital bills incurred *as a result of the injuries sustained in the accident which formed the subject of the litigation.* (Pl. Ans. to Interr.; Def. Opp. Brief, Exh. A). Plaintiff answered, "[p]lease see Plaintiff's Answer to Interrogatory No. 3 herein, identifying the itemized billing attached hereto." *Id.* Interrogatory No. 3 asked plaintiff to state the name and address of every healthcare provider who has examined and/or treated you *for injuries sustained in the accident. Id.*

4

$23,330 at Franklin Medical Center. *Id*. In addition, there were outstanding medical bills from Massey Physical Therapy, Hardtner Medical Center, and Franklin Medical Center – Behavioral Health that were not included the total. *Id.*

According to plaintiff, she underwent surgery for the cyst removal at LSU – Shreveport. (Pl. Depo., pgs. 19-20). Therefore, even if the medical expenses from LSU/University Health, i.e., $4,188.50, are removed from the calculus, plaintiff still incurred accident-related medical bills in excess of $90,000 – at least according to her pre-removal discovery responses.

Even if additional medical expenses should have been excluded from the total, plaintiff testified that, prior to the accident, she was earning $10 per hour and working approximately 26 hours per week, for total weekly wages of $260. *See* Pl. Depo. pg. 11. Plaintiff has not worked since the accident on May 30, 2017. *Id.*, pgs. 8. Therefore, by the time of removal on February 1, 2019, she had accrued lost wages of $22,880 ($260/week x 88 weeks). When combined with general damages for ongoing knee, hip, right shoulder, and rectum pain, plus perineal nerve enhancement and depression,[2] the court readily finds that the amount in controversy exceeded $75,000 at the time of removal.

## II.     Wal-Mart Timely Removed the Case to Federal Court

Under the removal statute, a defendant must file a notice of removal: 1) within 30 days after the defendant receives, through service or otherwise, a copy of the initial pleading setting forth the claim for relief, or the summons, whichever period is shorter; or 2) if the case "stated by the initial pleading is not removable," within 30 days after defendant's receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may

---

[2] Pl. Depo., pgs. 55-56, 62.

first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1) & (3).[3]

To trigger § 1446(b)'s first 30 day removal period, the initial pleading must include a "specific allegation that damages are in excess of the federal jurisdictional amount." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *Mumphrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 (5th Cir. 2013).[4] Here, plaintiff's original petition does not contain any such allegation; thus, the initial 30 day removal window was not triggered.

The Fifth Circuit endeavored to establish another "bright line" rule for purposes of § 1446(b)'s second 30 day removal period. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002). The court explained that

> the information supporting removal in a copy of an amended pleading, motion, order or other paper must be "unequivocally clear and certain" to start the time limit running for a notice of removal under the second paragraph of section 1446(b).[5] This clearer threshold promotes judicial economy. It should reduce

---

[3] Other than dividing the 30 day removal periods into separately numbered paragraphs, the remaining changes wrought by the JVCA do not undermine the Fifth Circuit decisions regarding the 30 day removal periods. *See* discussion, *infra*.

[4] "*Chapman* lays out a 'bright line rule requiring the plaintiff, if [s]he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a *specific allegation that damages are in excess of the federal jurisdictional amount*.'" (emphasis added). *Mumphrey, supra* (quoting *Chapman, supra*). As the Fifth Circuit explained,
> [t]he *Chapman* court had several practical ramifications in mind when it announced this standard. By rejecting a so-called due-diligence standard, it sought to promote efficiency by preventing courts from expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading. Moreover, the *Chapman* court wanted to avoid encouraging defendants to remove cases prematurely for fear of accidentally letting the thirty-day window to federal court close when it is unclear that the initial pleading satisfies the amount in controversy.

*Mumphrey, supra* (internal citations omitted).

[5] Now § 1446(b)(3).

6

> "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

*Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) (footnote omitted).

This begs the question what must be included in an "other paper"[6] to make it "unequivocally clear and certain" that the amount in controversy exceeds the jurisdictional threshold?

Despite some confusion,[7] *Bosky* managed to provide the lower courts with some guidance. The court cited Fifth Circuit cases such as *S.W.S. Erectors, Inc. v. Infax, Inc.*, and *Wilson v. Belin*, that it deemed consistent with its "unequivocally clear and certain" standard. *Bosky, supra* (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 491-92 (5th Cir. 1996); *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994)).[8] In both *S.W.S. Erectors* and *Wilson*, the removals were premised upon written evidence obtained from plaintiffs which acknowledged *specific damage figures that exceeded the federal jurisdictional minimum. Id.*

In addition, *Bosky* relied on the different meanings attributable to "setting forth" and "ascertained" – the two terms used to describe the information needed to trigger the first and second 30 day removal windows – to infer that the requisite trigger for the second removal period necessarily is stiffer than *Chapman*'s bright-line rule for the initial removal period.

---

[6] Under the JVCA, "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A).

[7] *See Mumphrey*, 719 F.3d at 400.

[8] *Bosky* also cited *Marcel v. Pool* Co., 5 F.3d 81, 82-85 (5th Cir. 1993). *Marcel*, however, did not contemplate the 30 day removal clock. *See Mumphrey, supra*.

*Bosky, supra*.

While it is difficult to conceive of a more demanding requirement than that set forth in *Chapman*, i.e., a specific allegation that damages exceed the federal jurisdictional minimum, one must recall that *Bosky* was decided under the mistaken premise that *Chapman*'s bright-line rule had been degraded by subsequent amount-in-dispute cases, which, as it turns out, are inapposite. *See Mumphrey, supra*. Consequently, *Bosky* should be read as imposing a trigger for the second removal period that is *at least* as strict as that set forth in *Chapman*.[9]

Consistent with this interpretation, the "other paper[s]" that the *Bosky* defendants relied on to support removal were documents that revealed actual medical expenses in excess of $75,000. *Bosky v. Kroger*, Appellee Brief, 2001 WL 34127780. Even more telling is that more than thirty days before removal, the defendants obtained discovery from the plaintiff stating that the plaintiff would "not seek more than $500,000.00 for all of her damages and may seek less than this amount . . . " plus a written statement that the plaintiff's medical damages were around $50,000. *Id.* By finding removal timely, *Bosky* effectively held that the foregoing evidence was insufficient to commence the 30-day removal period. Rather, the 30-day removal clock was not triggered until defendant obtained written proof of actual damages that exceeded the jurisdictional minimum.

In this case, plaintiff contends that Wal-Mart should have determined that the amount in

---

[9] An unintended consequence of *Bosky*, is that a defendant may be able to establish by a preponderance of the evidence that the amount in controversy exceeds the requisite jurisdictional minimum, even though the pleadings and "other papers" do not suffice to trigger the § 1446(b) removal window(s). *See Mumphrey*, 719 F.3d at 400, n.13; *Biggs v. Cajun Operating Co.*, 2011 WL 196096 (N.D. Tex. Jan. 19, 2011) (noting the incongruity between the standard to satisfy amount in controversy and the standard to trigger mandatory removal).

controversy exceeded $75,000 at an unspecified date more than 30 days before removal. In support of her motion, Matute submitted her affidavit, in which she averred:

> That she is an employee of Wal-Mart, but was visiting a Wal-Mart store in Winnsboro, LA during her time off on 30 May 2017 when she fell as a result of a foreign substance on the floor of the Wal-Mart store.
>
> That following that fall, she has been under continuous medical care and has submitted all of her medical treatment information and injury data to Wal-Mart in order to maintain her leave of absence employment status.
>
> That she was placed on disability leave by Wal-Mart as a result of the fall and has had frequent communication with Wal-Mart and its adjusters concerning her physical condition since the date of her fall.
>
> That part of the Wal-Mart leave of absence provisions required that she provide periodic updates of her medical care as reflected in the attached medical update forms.
>
> That based upon the information she provided to Wal-Mart as well as the medical information made available to Wal-Mart between 30 May 2017 and 1 February 2019 when Wal-Mart filed the Notice of Removal of her petition to federal court, Wal-Mart had sufficient information to discern the nature and severity of her injuries.

(Affidavit of Abigail Matute; M/Remand, Exh. B).

Plaintiff also adduced, *inter alia*, a copy of a September 25, 2018, letter issued by Sedgwick,[10] that approved plaintiff's leave from August 25, 2018, until December 30, 2018. (M/Remand, Exh. C).

      Plaintiff contends that this case is unique because Wal-Mart was Matute's employer, and therefore knew about her loss of income and the nature of her injuries. Removing defendants, however, are not held to a due diligence standard. *Drago v. Sykes*, Civ. Action No. 13-563, 2013 WL 3804834 (E.D. La. July 19, 2013) (citing *Chapman*, *Mumphrey*, and *Bosky*).[11]

---

[10] Sedgwick apparently manages Wal-Mart's disability leave.
[11] If a defendant has to analyze and dissect medical treatment records to divine whether the nature and cause of a plaintiff's injuries satisfy the amount in controversy requirement, then

Moreover, there is no indication that at any time more than 30 days prior to removal plaintiff provided Wal-Mart with an "other paper" that contained specific damage estimates in excess of $75,000, as required by *Bosky* to trigger the second 30 day removal period, 28 U.S.C. § 1446(b)(3).

Rather, it is manifest that the 30 day removal clock authorized under § 1446(b)(3) was not triggered in this case, until January 16, 2019, when Wal-Mart received plaintiff's medical bills and records that included a *specific damage estimate* in excess of the jurisdictional minimum. Wal-Mart timely removed the case within 30 days thereafter.

Even if it could be argued that the medical records and bills did not make it "unequivocally clear and certain" that the amount in controversy exceeded $75,000, that does not then render removal premature. The "unequivocally clear and certain" standard is applied when a court is determining whether a defendant has timely removed, not whether removal was permissive. Stated differently, the Section 1446(b)(3) 30-day clock acts as a ceiling or limit on removal, not as a jurisdictional floor. As one court put it, Section 1446 "does not say anything about removals that occur too soon." *Robinson v. Quality Ins. Co.*, 633 F. Supp. 572, 576 (S.D. Ala. 1986). If, before the 30-day clock starts, a defendant can demonstrate by a preponderance of the evidence that the jurisdictional threshold is met, he or she may remove without being required to "unlock" the 30-day window by presenting "unequivocally clear and certain"

---

those papers do not make removal "unequivocally clear and certain" as *Bosky* contemplated. Likewise, if a defendant has to conduct independent research by consulting "quantum books," then the discovery responses are not sufficiently "unequivocally clear and certain" to trigger the 30-day removal period. *See Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. March 4, 2011) (unpubl.).

evidence.[16]

As discussed above, the court finds that the documents presented do prove, by a preponderance of the evidence, that the amount in controversy exceeded the jurisdictional minimum.

## Conclusion

For the above-assigned reasons, the undersigned finds that the removal did not transgress § 1446(b)'s 30 day removal limits. 28 U.S.C. § 1446(b)(1) & (3). Accordingly,

IT IS RECOMMENDED that plaintiff's motion to remand [doc. # 7] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

---

[16] *See Mumphrey, supra* (even if defendant *could* have removed the suit, the allegations did not start the clock such that defendant was *required* to remove).

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 21st day of May 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE